IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OLTON L. DUMAS,

                          Plaintiff,                                  OPINION & ORDER

   v.

VICTORIA L. TUCKER and CHLOE MOORE,                       15-cv-454-jdp

                          Defendants.

---

Pro se prisoner Olton Dumas is proceeding with Fifth and Fourteenth Amendment claims against defendants Victoria Tucker and Chloe Moore. Plaintiff alleges that Tucker and Moore, who are both agents in the Wisconsin Department of Corrections (DOC)—Division of Community Corrections, violated his due process rights by depriving him of a preliminary hearing before revoking his extended supervision. Specifically, plaintiff alleges that Tucker and Moore improperly drafted a statement for plaintiff to sign that admitted to violating a condition of his supervised release, and that they forged his signature on the statement.

Tucker and Moore now move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 11. They contend that the unlawful conduct that plaintiff alleges was "random and unauthorized," meaning that it would have been impossible for the state to provide plaintiff with pre-deprivation remedies. And because plaintiff had adequate post-deprivation remedies, Tucker and Moore argue that plaintiff cannot pursue his due process claims in federal court. I conclude that Tucker and Moore's conduct was not "random and unauthorized," and so I will deny their motion to dismiss.

ALLEGATIONS OF FACT

I draw the following facts from plaintiff's complaint, accepting them as true at this point and drawing all reasonable inferences in plaintiff's favor. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). I recounted plaintiff's allegations in the screening order. Dkt. 8. But in opposing Tucker and Moore's motion to dismiss, plaintiff indicates that I misunderstood some of his allegations and he provides clarification.

In March 2015, plaintiff was serving the extended supervision portion of a criminal sentence in Wisconsin. Moore was the agent assigned to supervise plaintiff. Around March 6, 2015, plaintiff violated the terms of his extended supervision by failing to report to Moore, and so she sought an administrative warrant for plaintiff's arrest. The Beloit Police Department arrested plaintiff two months later.

After his arrest, plaintiff was detained at a county jail, where officials interviewed him on two occasions. The first interview was with a Beloit detective, who questioned plaintiff about a stabbing that the detective was investigating. Plaintiff stated that he wanted counsel, at which point the interview ended. The second interview was with defendant Tucker. Tucker began by questioning plaintiff about the stabbing, but the conversation then shifted to other topics. Tucker wrote down plaintiff's responses on a DOC-1305 form, which the DOC uses to record statements. But the form, as Tucker completed it, did not accurately reflect plaintiff's statements. Specifically, Tucker did not mention that plaintiff reported that he was having psychological problems and that discussing certain events from his past caused him emotional distress. Tucker also did not record the questions that she asked plaintiff. According to plaintiff, he did not admit to violating any of the conditions of his supervision.

Tucker asked plaintiff to review the statement. He informed her that he could barely read it because he did not have his reading glasses. Plaintiff asked Tucker if he could write his own statement rather than sign the draft that she had prepared, or at least take Tucker's draft and review it with counsel before signing it. Tucker refused these requests. Instead, she pointed to the sections of the form that plaintiff needed to sign, and then she left.

In my screening order, I indicated that plaintiff signed the statement. He has now clarified that he never did so. Dkt. 14, at 8. But plaintiff also alleges that the DOC waived his preliminary hearing based on the statement. Dkt. 1, ¶ 41. Thus, I now understand plaintiff to be alleging that Tucker (or Moore) forged his signature on the written statement. As a result, plaintiff did not have a preliminary revocation hearing to determine whether there was probable cause to believe that he had violated the conditions of his supervision.

Plaintiff eventually reviewed the statement that Tucker had prepared. He noticed several misstatements and omitted facts. In particular, Tucker did not accurately record plaintiff's explanations for the actions that led to his arrest, and she mischaracterized plaintiff's drug and alcohol use to make it seem as though he had violated the terms of his supervision. The DOC eventually revoked plaintiff's extended supervision after holding a final hearing, and plaintiff returned to prison in September 2015.

Plaintiff filed a complaint in this court on July 23, 2015, before the DOC had conducted a final revocation hearing. Tucker and Moore have now moved to dismiss plaintiff's complaint. I have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because plaintiff's claims arise under federal law.

ANALYSIS

In screening plaintiff's complaint, I concluded that he had stated claims against Tucker and Moore upon which relief could be granted. *See* Dkt. 8, at 1 (citing 28 U.S.C. §§ 1915, 1915A). Tucker and Moore now move to dismiss plaintiff's claims against them pursuant to Rule 12(b)(6), essentially seeking reconsideration of my screening order. "[T]o survive a 12(b)(6) motion to dismiss, a complaint must allege facts that 'state a claim to relief that is plausible on its face.'" *Fuqua v. SVOX AG*, 754 F.3d 397, 400 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must accept all well-pleaded facts as true and "assess whether those factual assertions 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). With these standards in mind, I am not persuaded that I erroneously granted plaintiff leave to proceed. I will therefore deny Tucker and Moore's motion to dismiss.

For purposes of providing due process of law, the "two important stages in the typical process of parole revocation" are a preliminary hearing and a final revocation hearing. *Morrissey v. Brewer*, 408 U.S. 471, 485-87 (1972). The preliminary hearing is to determine whether probable cause exists to believe that an offender violated a condition of his extended supervision, and it occurs before "someone not directly involved in the case." *Id.* at 485. Tucker and Moore indicate that they did not afford plaintiff a preliminary hearing in this case because he had signed a statement admitting to violating a condition of his supervision. Dkt. 12, at 8 (citing Wis. Admin. Code DOC § 331.05(2)(b)).

Plaintiff alleges that Tucker intentionally misrepresented plaintiff's comments in crafting the statement and that Tucker or Moore forged his signature on the statement. Tucker and Moore contend that even if the allegations about their misconduct are true,

4

plaintiff has alleged only "random and unauthorized" conduct that could not have been anticipated or addressed through pre-deprivation procedures. This would mean that plaintiff could not pursue a due process claim in federal court because he had adequate post-deprivation remedies available (e.g., a final revocation hearing). The Seventh Circuit recently discussed this concept in *Armstrong v. Daily*, rejecting a similar argument from the defendants in that case. 786 F.3d 529, 538-46 (7th Cir. 2015). The court of appeals adduced three guiding points from its survey of Supreme Court precedent on this area of law: "first, 'random and unauthorized' conduct means unforeseeable misconduct that cannot practicably be preceded by a hearing; second, misconduct that is legally enabled by a state's broad delegation of power is not 'random and unauthorized'; and third, an official's subversion of established state procedures is not 'random and unauthorized' misconduct." *Id.* at 543. Under these standards, I conclude that the conduct that plaintiff has alleged in this case does not qualify as "random and unauthorized."

"Evaluating conduct to determine whether it is random and unauthorized involves determining whether the conduct was predictable. . . . If state procedures allow unfettered discretion by state actors, then an abuse of that discretion may be predictable, authorized, and preventable with pre-deprivation process." *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996) (citations omitted). Here, Tucker and Moore's conduct may have been contrary to the DOC's procedures for interviewing offenders accused of violating the conditions of their extended supervision. But that does not mean that their conduct was unforeseeable or unpreventable. If parole agents have discretion to investigate violations and initiate revocation proceedings, then there is certainly a chance that they could abuse that discretion. *See Armstrong*, 786 F.3d at 545 ("It is foreseeable that law enforcement officers will, on

occasion, act overzealously to pursue conviction of the wrong person. . . . Prosecutor Norsetter was acting within the broad delegation of power he had been given . . . and Armstrong was deprived of his liberty through established state procedures.").

The problem here is that Tucker and Moore's alleged misconduct essentially denied plaintiff the very pre-deprivation process that Wisconsin created to protect against abuses of discretion: a preliminary revocation hearing. Although plaintiff's claims arise in the context of revoking an offender's extended supervision rather than bringing criminal charges, *Armstrong* still prevents Tucker and Moore from relying on post-deprivation remedies to preempt plaintiff's due process claim. *Id.* ("Armstrong's claim is that the procedure he was due—a fair criminal trial—was rendered unfair by [the prosecutor]'s deliberate wrongdoing."); *see also Tyler v. Wick*, No. 14-cv-68, 2015 WL 8074348, at *6 (W.D. Wis. Dec. 4, 2015) (applying *Armstrong* to misconduct that occurred during probation revocation proceedings). Tucker and Moore's misconduct was foreseeable and it occurred because of the broad authority that Wisconsin delegated to them. Under these circumstances, Tucker and Moore's actions were not "random and unauthorized." Thus, they cannot rely on available post-deprivation remedies to avoid liability for plaintiff's alleged due process violations.

occasion, act overzealously to pursue conviction of the wrong person. . . . Prosecutor Norsetter was acting within the broad delegation of power he had been given . . . and Armstrong was deprived of his liberty through established state procedures.").

The problem here is that Tucker and Moore's alleged misconduct essentially denied plaintiff the very pre-deprivation process that Wisconsin created to protect against abuses of discretion: a preliminary revocation hearing. Although plaintiff's claims arise in the context of revoking an offender's extended supervision rather than bringing criminal charges, *Armstrong* still prevents Tucker and Moore from relying on post-deprivation remedies to preempt plaintiff's due process claim. *Id.* ("Armstrong's claim is that the procedure he was due—a fair criminal trial—was rendered unfair by [the prosecutor]'s deliberate wrongdoing."); *see also Tyler v. Wick*, No. 14-cv-68, 2015 WL 8074348, at *6 (W.D. Wis. Dec. 4, 2015) (applying *Armstrong* to misconduct that occurred during probation revocation proceedings). Tucker and Moore's misconduct was foreseeable and it occurred because of the broad authority that Wisconsin delegated to them. Under these circumstances, Tucker and Moore's actions were not "random and unauthorized." Thus, they cannot rely on available post-deprivation remedies to avoid liability for plaintiff's alleged due process violations.

ORDER

IT IS ORDERED that defendants Victoria Tucker and Chloe Moore's motion to dismiss, Dkt. 11, is DENIED.

Entered June 7, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge