IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OLTON L. DUMAS,

Plaintiff,

v.

VICTORIA L. TUCKER and CHLOE MOORE,

Defendants.

OPINION & ORDER

15-cv-454-jdp

---

Pro se plaintiff Olton Dumas, a prisoner incarcerated at the Kenosha Correctional Center, brings this action against defendants Victoria Tucker and Chloe Moore, agents for the Wisconsin Department of Corrections (DOC)—Division of Community Corrections. Dumas contends that defendants violated his due process rights by depriving him of a preliminary hearing before revoking his extended supervision. Dumas does not challenge his conviction or his sentence but seeks only monetary damages.

Both sides move for summary judgment. The decisive issue here is whether Dumas admitted to violations of the conditions of his extended supervision. If he admitted the violations, then he was not entitled to a preliminary hearing. Defendants have adduced a form, apparently signed and initialed on each page by Dumas, which admits the violations. Dumas contends that the form is not a valid admission for several reasons. None of these reasons are persuasive, and Dumas has failed to raise a genuine dispute of fact that he admitted at least one violation of his supervision.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

On April 30, 2013, Dumas began a term of extended supervision. During the time relevant to this case, his probation and parole agent was defendant Chloe Moore. The many terms of his extended supervision included that he attend scheduled and unscheduled meetings with his agent and that he not possess or consume alcohol or illicit drugs. Dkt. 27-1, 79-80.

In early March 2015, Dumas was detained briefly on a probation hold. Shortly after he was released, about March 6, Moore instructed Dumas to report to her office. Dumas contends that he was to report on March 9, 2015, and when he showed up at Moore's office, she was not there. Moore contends that the meeting was actually scheduled for March 10. Because he had failed to make contact with her, Moore issued a warrant for Dumas' arrest on March 13, 2015. There is no dispute that Dumas failed to actually contact Moore between March 6 and May 3, 2015. Dkt. 36, ¶ 21.

On May 3, 2015, a stabbing took place at Dumas' residence; the victim identified Dumas as the person who stabbed him. Dumas was arrested and detained in the Rock County jail in Janesville on charges of possession of cocaine and attempted homicide. Defendant Victoria Tucker was a probation and parole officer whose duties included serving as Rock County jail liaison. Moore, whose office was in Beloit, asked Tucker to interview Dumas in connection with the potential revocation of his extended supervision.

Tucker interviewed Dumas and documented his responses on a form DOC-1305. The form indicates that Dumas was informed of his rights concerning his statement and that he

consented to Tucker's writing out Dumas's statement for him. Dumas' DOC-1305 form includes the following:

> I have not reported since 03/06/15. I was using cocaine, alcohol, and anything else I could find to ease the pain. I was having a lot of psychological stuff going on in my head. On 05/03/15, I had about four or five bags of cocaine on me when I got arrested. It was for personal use. I had a cocaine pipe on me as well.

Dkt. 36, ¶ 47. The parties agree that this is not a verbatim transcription of Dumas's words, but Tucker intended to accurately paraphrase his statement. Tucker offered to read Dumas's responses aloud but Dumas declined this offer. Dkt. 36, ¶¶ 51-53. Tucker asked Dumas to read the statement, confirm that it was accurate, and sign the form. The form is signed, apparently indicating that Dumas reviewed the statement and accepted it as accurate. Dumas now contends that he did not sign the form, although he does not dispute that he initialed each page.

On May 12, 2015, Tucker served Dumas with papers related to his revocation proceeding. The papers indicated that there would be no preliminary hearing because Dumas had admitted the violations in his statement. Dumas raised no objection to his statement until July 22, 2015, when he filed a petition to exclude the statement. Dumas contended in his petition that Tucker had paraphrased and restructured his statement to make it seem that he had admitted to a recent drug use, whereas he was really talking about problems he had in 2013 or 2014. Dkt. 27-5, at 5. Dumas did not, however, deny his drug use or his failure to report.

Dumas had a final revocation hearing on August 10, 2015. Dumas was represented by counsel. Tucker was present and available to answer questions about Dumas's statement, but Dumas's counsel did not call her to testify. The administrative law judge found that Dumas

3

violated the terms of extended supervision, Dumas's extended supervision was revoked, and he was sentenced to two years, ten months, and nine days of incarceration. Dkt. 27-6, at 3.

He filed this suit under 42 U.S.C. § 1983. After screening his pleading, I allowed Dumas to proceed on his claim of a due process violation against defendants Tucker and Moore.

ANALYSIS

The familiar standards govern the parties' motions for summary judgment. A court must grant summary judgment when no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the parties cross-move for summary judgment, as they do here, the court "look[s] to the burden of proof that each party would bear on an issue of trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citation omitted).

Dumas contends that his due process rights were violated because he was deprived of a preliminary hearing. The Fourteenth Amendment's due process requirements apply to revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The "two important stages" in the typical revocation process are a preliminary hearing and a final revocation hearing. *Id.* at 485-87. The preliminary hearing occurs shortly after the parolee's arrest, "usually at the direction of his parole officer," and the final revocation hearing occurs when the state formally revokes parole. *Id.* at 485. Here, Dumas was given a final revocation hearing, so the remaining issue is his right to a preliminary hearing.

The preliminary hearing determines whether "probable cause or reasonable ground" exists to believe that the parolee has violated the conditions of his parole and provides an opportunity to challenge whether such probable cause or reasonable ground exists. *Id.* at 485. It must occur "as promptly as convenient after arrest" and "someone not directly involved in the case" must make the probable cause determination. *Id.* But the right to a preliminary hearing is not absolute, and "courts have highlighted several situations in which a preliminary hearing is not required." *Hall v. Kamin*, No. 08-cv-258, 2008 WL 4615045, at *2 (W.D. Wis. June 3, 2008) (collecting cases). In particular, a preliminary hearing need not take place when the offender admits to violating a condition of his parole. *See Morrissey*, 408 U.S. at 490 ("If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."); Wis. Admin. Code DOC § 331.05(2).

So the issue here is whether, during his interview with Tucker, Dumas admitted to violations of his extended supervision, as reported on the form DOC-1305. Dumas contends on summary judgment that the DOC-1035 was "fraudulent" and that it was obtained through "misconduct." Dkt. 22, at 6-8. But his statements about the form are equivocal and inconsistent, so I begin by sorting out what is admitted and what is not.

Dumas does not actually deny that he violated the conditions of his extended supervision. He does not dispute that he failed to report to Moore for two months, consumed alcohol, and used illicit drugs during his extended supervision. Dkt. 36, ¶¶ 18-22, 28-29, 50. Nor does he dispute that Tucker interviewed him at the Rock County jail, that Tucker read

him a statement concerning his rights regarding his statement, that he authorized Tucker to write the statement for him, and that he initialed each of the three pages of the statement.

But Dumas contends that his admission to these violations is invalid. Dumas denies that he signed the statement, and he contends that the statement as written by Tucker does not accurately reflect his statement to her. He also contends that Tucker did not give him a fair chance to review the statement because he did not have his reading glasses and because he was suffering from psychological problems at the time, which rendered him incompetent to make a statement.

Dumas's disavowal of his statement is incredible for several reasons. I note particularly that he qualified but did not entirely disavow his statement during his revocation proceeding. And at his final revocation hearing, his counsel did not call Tucker to impeach her rendering of Dumas's statement. Nor did Dumas raise the issue of his competence. Accordingly, I will deny Dumas's motion for summary judgment because I cannot conclude that it is beyond genuine dispute that Dumas did *not* admit violations of his extended supervision.

I must view the evidence from the opposite perspective in considering defendants' motion for summary judgment. In this context, I must view the record in the light most favorable to Dumas, and giving him that benefit, I could conclude that he has raised a genuine dispute as to whether he signed the DOC-1305 form and whether he admitted to Tucker that he used illicit drugs. Dumas presents his affidavit stating that he did not make these statements to Tucker. Dkt. 24, ¶ 58. And he testified during his deposition that, although he had problems that led to drug use in 2014, he did not admit during the interview that he used drugs in 2015. Dkt. 31 (Dumas dep. 23:4-21). Viewing the record in Dumas's favor, I will consider these facts disputed.

6

But that still leaves Dumas's statement that he had not reported to Moore, his assigned probation and parole agent, from March 6 to May 3, 2015. Dumas does not deny making this admission to Tucker. Dumas explained to Tucker that he had gone to Moore's office on March 9. Dkt. 36, ¶ 20. But he does not deny that he admitted to Tucker that he made no contact with Moore after March 6 and that, other than the failed attempt on March 9, he made no effort to do so. Dkt. 24, ¶ 58. Thus, even viewing the record in the light favorable to Dumas, he fails to raise a genuine dispute of fact that he admitted to Tucker his failure to report to Moore.

The failure to report to Moore clearly violated the terms of his extended supervision, which justified the decision to forgo the preliminary hearing. *See State ex rel. Shock v. Dep't of Health & Soc. Servs.*, 77 Wis. 2d 362, 368-69, 253 N.W.2d 55, 58 (1977) ("[A]bsconding or not advising the probation agent of whereabouts is a serious probation violation that often goes to the heart of probation supervision. If the agent does not know where the probationer is there can hardly be any supervision."). At the final revocation hearing, the ALJ found additional violations that warranted a term of incarceration. Dkt. 27-6, at 3. But the admitted failure to report was enough to justify eliminating the preliminary hearing.

Dumas's arguments about Tucker's misconduct in taking his statement are not supported by the record. Dumas argues that the statement was not verbatim, but there is no requirement that the DOC-1305 contain a verbatim transcription. Dumas also argues that he was denied a meaningful opportunity to review his statement to ensure its accuracy because he did not have his reading glasses. But he admits that Tucker offered to read the statement aloud to him, but he declined. Dkt. 36, ¶¶ 51-53. He argues that he was suffering from psychological problems that rendered him incompetent, but he cites no evidence to support

his contention that he was incompetent. Dkt. 34, at 3. Dumas also disputes the authenticity of his signature on the DOC-1305 form, contending that it was forged. This, too, is incredible: the only evidence he cites to support this claim is that he remembers refusing to sign the form at one point based on his belief that unsigned statements could not be used against him. Dkt. 31 (Dumas Dep. 43:22-45:5). But his refusal to sign is immaterial in light of the fact that he initialed each page. *Id*. (Dumas Dep. 31:17-19; 32:1-4; 43:25-44:22; 45:3-5).

I make one last point in closing. I have so far given Dumas the benefit of the doubt concerning his denial that he signed the DOC-1305 form and that he admitted to Tucker that he used illicit drugs while on supervision. But his current denials are inconsistent with his statements and conduct during his revocation proceeding. *See* Dkt. 27-5. And other than Dumas's recent denials, nothing in this record even slightly impeaches Tucker's version of the events. Viewing the record as a whole, even in the light most favorable to Dumas, no reasonable jury could find that Tucker misrepresented Dumas's statement in any substantive way.

I will grant summary judgment to defendant on the ground that there is no genuine dispute of fact that Dumas admitted at least one violation of his extended supervision and thus no preliminary hearing was required. Because I grant summary judgment on this ground, I need not consider the other arguments raised by defendants.

## ORDER

IT IS ORDERED that:

1.  Plaintiff Olton Dumas's motion for summary judgment, Dkt. 21, is DENIED.

8

2. Defendants Victoria Tucker and Chloe Moore's motion for summary judgment, Dkt. 25, is GRANTED.

3. This case is DISMISSED.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered January 27, 2017.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge